# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL KAHAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-407 |
| | ) | |
| **SLIPPERY ROCK UNIVERSITY OF** | ) | |
| **PENNSYVANIA, EVA TSUQUIASHI-** | ) | |
| **DADDESIO, JOHN CRAIG,** | ) | |
| **CHARLENE WINSLOW, THOMAS** | ) | |
| **[E.] WINSLOW, SR., THOMAS [M.]** | ) | |
| **WINSLOW, JR.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

This case involves issues about civil rights, employment, and common law torts.

Paul Kahan ("Kahan") accuses his former employer, Slippery Rock University ("SRU"), several

of its individual employees (the "Individual SRU Defendants," and collectively, with SRU, the

"SRU Defendants"), and the husband and son of one of its employees (the "Individual Winslow

Defendants"), of wrongfully either failing to renew his teaching contract, or causing that contract

not to be renewed. This court granted, in part, the SRU Defendants' motion for summary

judgment and entered judgment in their favor on all claims that Kahan asserted pursuant to

federal law. (ECF Nos. 123-25.) At the same time, the claims asserted by Kahan pursuant to

Pennsylvania law were dismissed, without prejudice to Kahan's right to refile those claims in the

appropriate state court. (ECF No. 124.)

# I.      **PROCEDURAL BACKGROUND**

Kahan filed a timely motion for reconsideration asking this to court vacate the summary judgment order and judgment entered in September and schedule this case for trial. (ECF No. 126; ECF No. 127 at 2.)  Kahan asserts that the court erred in two principal respects: (1) by failing to examine the relevant facts; and (2) by improperly deciding questions of fact. (ECF No. 127 at 3, 8.)   With respect to the first asserted error, Kahan specifically avers that the court failed to consider a) the deposition testimony of Charlene Winslow ("Mrs. Winslow"), b) evidence that Kahan was engaged in gender nonconforming behavior, and c) Kahan's declaration. (Id. at 3-8.)  With respect to the second asserted error, Kahan specifically avers that this court improperly resolved factual disputes by a) deciding that the filing of criminal charges against Kahan was not an adverse employment action, b) deciding that Kahan failed to identify a proper comparator, c) ignoring evidence regarding procedural irregularities surrounding Kahan's termination,[1] and d) ignoring evidence of causation. (Id. at 8-16.)

The SRU Defendants and the Individual Winslow Defendants filed responses in opposition to Kahan's motion, arguing that Kahan's motion should be denied because it fails to advance any argument that would require a different result in this case. (ECF Nos. 129-31.)   For the reasons set forth below, Kahan's motion for reconsideration will be denied.

---

[1] Kahan claims that SRU "terminated" his employment.  SRU did not terminate Kahan, but, instead, decided not to renew his one-year probationary teaching contract.  The distinction is ultimately inconsequential, but is being noted for purposes of clarity.  In the summary judgment opinion, this court properly referred to SRU's conduct as the non-renewal of Kahan's one-year teaching contract. (ECF No. 123 at 73.)

## II.    **LEGAL AUTHORITY**

A motion to reconsider should granted only if the movant demonstrates: 1) an intervening change in controlling law; 2) the availability of new evidence not previously available; or 3) the need to correct a clear error of law or prevent manifest injustice. FED. R. CIV. P. 59(e); <u>Allah v. Ricci</u>, 532 F.App'x 48, 51 (3d Cir. 2013) (citing <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 669 (3d Cir. 2010)); <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999) (citing <u>N. River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)). By reason of the interest in finality, at least at the district court level, motions for reconsideration should be sparingly granted. <u>Rottmund v. Cont'l Assurance Co.</u>, 813 F.Supp. 1104, 1107 (E.D. Pa. 1992). In order to be successful on a motion for reconsideration, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made. <u>United States v. Jasin</u>, 292 F.Supp.2d 670, 676 (E.D. Pa. 2003).

A motion for reconsideration is not to be used to relitigate, or "rehash," issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made. <u>Williams v. City of Pittsburgh</u>, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998); <u>Reich v. Compton</u>, 834 F.Supp. 753, 755 (E.D. Pa. 1993), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u>, 57 F.3d 270 (3d Cir. 1995); <u>Keyes v. Nat'l R.R. Passenger Corp.</u>, 766 F.Supp. 277, 280 (E.D. Pa. 1991). A motion for reconsideration is not to be used as a way to advance additional arguments that the litigant could have made, but chose not to make, sooner, or as an opportunity for a litigant, having lost, to change theories of the case and advance new, often contradictory, evidence in support. <u>Bell v. City of Phila.</u>, 275 F. App'x 157, 160 (3d Cir. 2008); <u>Spence v. City of Phila.</u>, 147 F.App'x 289, 291-92 (3d Cir. 2005); <u>Bhatnagar v. Surrendra Overseas Ltd.</u>, 52 F.3d 1220, 1231 (3d Cir. 1995);

Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3d Cir. 1987); Miller v. Court of Common Pleas of Erie Cnty., No. 12-206, 2014 WL 108585, at *2 (W.D. Pa. Jan. 10, 2014).

## III.    ANALYSIS

Kahan contends that he is entitled to relief because this court "committed a clear error of law requiring reversal of the summary judgment decision." (ECF No. 127 at 2.)  Kahan advances seven reasons why this court should not have entered judgment as a matter of law, and should have instead scheduled this case for trial.[2]  The court separately considers each of Kahan's arguments below, but concludes that none demonstrate that this court made a mistake or overlooked arguments that were previously made by entering judgment as a matter of law on Kahan's federal claims.

Kahan's motion does no more than restate arguments that were previously made, and rejected, during summary judgment briefing, and raise novel, and contradictory, arguments for the first time on reconsideration.  As set forth above, these are not valid reasons for a court to reconsider a previously-issued decision.

---

[2] Although the court need not reach this issue because Kahan's motion for reconsideration is denied, even if the court granted Kahan's motion, entry of a trial schedule would not follow. Instead, the Individual Winslow Defendants' motions for summary judgment with respect to Kahan's state-law claims would become viable and require a ruling.  In addition, certain legal and factual issues concerning the federal claims that this court previously found to be inconsequential in ruling on the motion for summary judgment, could become crucial.  For instance, Kahan made no argument with respect to pretext in the context of his retaliation claim. (ECF No. 100 (Kahan summary judgment brief) at 29.)  The court did not reach the issue because Kahan failed to establish an essential element of his prima facie case, i.e., causation. (ECF No. 123 at 49-55.)  This issue could become dispositive, and require examination prior to trial, if this court was to grant Kahan's motion for reconsideration.

A. **Gender Stereotyping**

Kahan contends that the court erred by concluding that "all of the complaints of aggression or rudeness made against Dr. Kahan were gender neutral" because the court failed to consider Mrs. Winslow's deposition testimony, which would permit a reasonable jury to "infer that she felt that Dr. Kahan, a male, was targeting her for violent retaliation because she was a female" and because "Ms. Winslow was stereotyping Dr. Kahan as a 'violent' male." (ECF No. 127 at 3.)

The deposition testimony upon which Kahan relies to support this argument on reconsideration concerns Mrs. Winslow's explanation to the history department employees about why she was working with her door closed or locked after the May 18, 2010 incident. (ECF No. 123 at 17-18; ECF No. 101-11 at 11-12 (Mrs. Winslow depo. at pp. 44-45).) In spontaneous testimony offered at her 2013 deposition, Mrs. Winslow testified that she "was afraid," because she is "a woman," that Kahan would return to campus with a gun and kill her. (ECF No. 101-11 at 11-12 (Mrs. Winslow depo. at pp. 44-45).) There is no indication in the record that Mrs. Winslow made this statement, or any statement to that effect, to any SRU employee in 2010, when she was explaining why her door would be closed or locked. The record is devoid of any evidence that Mrs. Winslow made any reference to her gender, Kahan's gender, or any gender stereotype, when she told them about the May 18, 2010 incident. The entirety of Mrs. Winslow's testimony on this matter, which this court previously considered in the summary judgment opinion, was that she told her co-workers that Kahan yelled at her and threw a DVD at her and because she was afraid that he would engage in such conduct again, or worse conduct, she would be closing or locking her office door. (ECF No. 101-11 at 5-13 (Mrs. Winslow depo.); ECF No. 123 at 67, 70.) There is no evidence that Mrs. Winslow told her co-workers during

these conversations that she was afraid of Kahan because he is a man, and she is a woman, or described him as "violent" or "aggressive."[3]

Kahan's argument on reconsideration that he was the victim of invidious gender stereotyping is not new. The court previously considered Kahan's argument that Mrs. Winslow's descriptions of Kahan as "sneaky," a liar, "arrogant," "rude," "demanding," "self-centered," "aggressive," "violent," and "belittling," was evidence of gender discrimination.[4] (ECF No. 123 at 29-31.) The court concluded that Kahan produced no evidence that would allow a reasonable jury to make the essential finding that men, but not women, possess these pejorative characteristics, and then explained why the case law relied upon by Kahan failed to support his theory of the case. (Id.) Kahan's citation, in his motion for reconsideration, to Mrs. Winslow's deposition testimony, to a Harvard Law Review article, and to additional case law, none of which emanates from this jurisdiction, does not dictate that this court reach a contrary decision now.

---

[3] To be clear, the court does not intend to indicate that Kahan would have established a prima facie case under either federal statute if Mrs. Winslow had referred to her, or Kahan's, gender, or described him as "violent" or "aggressive" during the discussions in May 2010 with her co-workers. The decision not to renew Kahan's contract was made in March 2010, and, as discussed in section III.D., Kahan was not banned from the SRU campus as a result of the incident, contrary to his contentions to that effect.

[4] Although yelling and throwing an item at a co-worker can be reasonably understood to be violent or aggressive behavior, and although there is evidence that Mrs. Winslow told SRU officials at the time that she was afraid and fearful of Kahan, Kahan cites to no evidence in the record that Mrs. Winslow, or any SRU official, actually used the word "violent" or "aggressive" to describe him. Kahan's own recitation of the record is that Mrs. Winslow described him as arrogant, rude, stupid, and a jerk and that the history department chairman described Kahan as incompetent, irresponsible, arrogant, inattentive to details, difficult to get along with, and not nice. (ECF No. 100 (Kahan summary judgment brief) at 13-14; ECF No. 99 (Kahan statement of additional material facts) ¶¶ 123-24, 152-53.) Despite this lack of supporting evidence, this court assumed for purposes of summary judgment, and continues to assume now, that Mrs. Winslow used the words "violent" and "aggressive" to describe Kahan at the time.

First, the evidence and case law is not new. Mrs. Winslow's deposition testimony was included as part of the record during the summary judgment proceedings. The law review article was published in 2010, before this lawsuit was even filed. All legal decisions cited in the motion for reconsideration were similarly issued before this lawsuit was filed.

Second, the evidence now relied upon does not demonstrate that his court committed a clear error. Mrs. Winslow's deposition testimony makes no commentary with respect to Kahan's gender, but instead ascribes arguably negative stereotypes to Mrs. Winslow based upon her own gender, i.e., that she is weak and subject to physical harm because she is female. In any event, as set forth above, even if the comment made by Mrs. Winslow at her deposition in 2013 could be construed as reflecting a negative gender stereotype about Kahan, as explained above, there is no indication in the record that Mrs. Winslow made the comment to her co-workers in 2010.

The law review article suggests that sex segregation in the military, prisons, and schools is justified, in part, based upon the argument that men are more physically aggressive than woman. David S. Cohen, Keeping Men "Men" and Women Down: Sex Segregation, Anti-Essentialism, and Masculinity, 33 HARV. J. LAW & GENDER 503, 532 (2010). Kahan fails to explain how Mr. Cohen's commentary supports his Title VII or IX claims. As the record stands, a jury would be required to make a series of inferences to reach the conclusion that describing a co-worker as "aggressive" or "violent" indicates gender discrimination in the workplace under the circumstances of this case.

The additional case law cited by Kahan is readily distinguishable from the circumstances of this case, and is not controlling precedent in any event. Vargas, Somoza, and Manessis, all stand for the proposition, inapplicable here, that gender-neutral conduct can be

combined with overtly gender-based conduct when assessing whether gender discrimination is severe and pervasive for purposes of a hostile work environment claim. Vargas v. Centura Health Corp., No. 07–1812, 2009 WL 2490131, at *5 (D. Colo. Aug. 13, 2009); Somoza v. Univ. of Denver, No. 05-355, 2006 WL 2535092, at *19 (D. Colo. Aug. 31, 2006); Manessis v. N.Y. City Dep't of Transp., No. 02-359, 2003 WL 289969, at *6 n.6 (S.D.N.Y. Feb. 10, 2003). The decisions do not support Kahan's argument that his Title VII and IX claims must be submitted to a jury because Mrs. Winslow referred to him as "violent" or "aggressive."

Although the district court, in Oakstone, did ascribe weight to a female employee's accusation that her former boyfriend and current co-worker was physically abusive during their prior relationship, in that case there was no dispute that the female employee harbored gender-bias against the former boyfriend and explicitly related that bias to management, which altered the former boyfriend's work assignments as a direct result. Oakstone v. Postmaster General, 397 F. Supp.2d 48 (D. Maine 2005). The record in this case is not comparable. Kahan adduced no evidence that any supervisor or administrator altered the terms or conditions of his employment based directly upon another employee's admitted gender-bias against him. Mrs. Winslow's assignment of negative attributes to Kahan, including "aggressive" and "violent," do not equate to a specific accusation that a former boyfriend engaged in domestic abuse. Finally, Young v. St. James Mgmt., LLC, 749 F.Supp.2d 281, 285-86 (E.D. Pa. 2010), is similarly distinguishable because comments about an individual's involvement in an interracial relationship are directly indicative of a racial-bias, and require no inferential leap, as do comments about being "aggressive" or "violent."

None of these authorities indicate that this court committed an error of law in determining that no reasonable jury could infer that SRU treated females more favorably than males based upon evidence of purported gender stereotypes.

Kahan's motion for reconsideration is an attempt to relitigate the gender stereotype issue that this court decided against him in the summary judgment opinion. Despite Kahan's current arguments, no reasonable jury could find, based upon this record, in favor of Kahan on his Title VII or Title IX claims. This court's prior ruling need not be reconsidered.

**B. Gender Non-Conforming Behavior**

Kahan next contends that "[t]his court erred by not considering evidence that… [Kahan]… was engaged in gender non-conforming behavior." (ECF No. 127 at 5.) As the SRU Defendants properly point out, Kahan does not assert a claim based upon gender non-conformance in his second amended complaint. (ECF No. 131 at 5.) The gender-based claims pled by Kahan, and pursued by Kahan during summary judgment, were instead based upon the opposite theory, i.e., gender stereotyping. (ECF No. 123 at 22.) Although legal claims can be pled in the alternative, a party cannot use summary judgment briefing as a way to inject new legal theories into a case. Bell, 275 F. App'x at 160; Spence, 147 F.App'x at 291-92; Bhatnagar, 52 F.3d at 1231; Trenton, 832 F.2d at 810; Miller, 2014 WL 108585, at *2. It follows that a party cannot use a motion for reconsideration of a summary judgment decision for this purpose. Kahan's contention that trial is warranted on a gender non-conformance claim that was neither pled nor raised in opposition to summary judgment must be, and is, rejected outright.

Regardless, Kahan's belated, and bald, assertion that unspecified Title VII claims could have survived summary judgment because Mr. and Mrs. Winslow thought Kahan's comment that their son was staring at a good-looking man during class was "odd" and "off," and

because Mrs. Winslow thought Kahan was "weird" is without substantive merit. This court considered this evidence in the summary judgment opinion. The court recounted that the Winslows told various SRU officials about Kahan's comment about their son staring at a good-looking man, and considered what effect that information had on Kahan's employment. (ECF No. 123 at 29, 44.) The analysis and conclusion would not change simply because Kahan now labels the comments as gender non-conforming. The court also noted in the summary judgment opinion that Mrs. Winslow found Kahan to be "weird" when he interviewed at SRU in 2009, but there is no evidence that Mrs. Winslow's personal opinion was repeated to any SRU official, or had any effect on SRU's employment decision. (Id. at 12.) The record reflects, to the contrary, that SRU hired Kahan despite Mrs. Winslow's opinion that he was weird, and her personal preference that a different candidate be hired. (ECF No. 122 (CCSMF) ¶ 108 n.12.) No reasonable jury could make any findings in Kahan's favor on his Title VII or IX claims based upon one employee's personal opinion that he was "weird."

The court cannot discern that any clear error of law was made on this basis.

## C. **Kahan Declaration**

Kahan contends that the court erred by granting summary judgment based upon a record that contains "legitimate questions of material fact." (ECF No. 127 at 7.) Specifically, Kahan argues that his declaration creates factual disputes with respect to a) whether he was accused of sexually harassing Mrs. Winslow's son, and b) whether he made a comment to Mrs. Winslow's son in class about staring at a good-looking man. (Id.; ECF No. 123 at 13-14.) The court examined the record, including Kahan's own deposition testimony, with respect to both issues in the summary judgment opinion. (ECF No. 123 at 45); Baer v. Chase, 392 F.3d 609 (3d Cir. 2004) (it is well established that a party may not create a material issue of fact to defeat

summary judgment by filing an affidavit disputing previously sworn testimony). At summary judgment, where any genuine evidentiary conflict was found in the record, this court viewed the record in the light most favorable to Kahan.

With respect to the first alleged factual dispute identified by Kahan in the summary judgment opinion, this court viewed the record in Kahan's favor by considering that Mr. Winslow accused Kahan of sexually harassing Mr. Winslow's son, even though there was evidence that Mr. Winslow only accused Kahan of disability-based harassment. The court noted that there was no evidence in the record to support a reasonable jury finding that Mrs. Winslow accused Kahan of sexually harassing her son. (ECF No. 123 at 44-45.) Although Kahan now alleges that his declaration creates a genuine dispute of material fact with respect to these matters, the paragraphs of the declaration to which he cites do not create a factual dispute with respect to whether Mrs. Winslow accused him of sexual harassment. (ECF No. 127 at 7 (citing ECF No. 101-13 ¶¶ 49-55).) The paragraphs relied upon by Kahan indicate that Mr. and Mrs. Winslow's son accused him of sexual harassment, and that Mrs. Winslow accused Kahan of calling her a bitch. Kahan fails to identify a clear error of any kind by citing to these paragraphs of his declaration.

Although subsequent paragraphs of Kahan's declaration, to which Kahan fails to cite in his motion for reconsideration, refer to Mrs. Winlsow's "campaign of harassment" in the Spring of 2010, and repetition of her son's "claims against [him]" to various SRU officials in December 2009 and March 2010, these averments do not establish that the court erred in viewing the record in Kahan's favor by considering for purposes of resolving the summary judgment motion that Mr. Winslow was the defendant who accused Kahan of sexual harassment. (ECF No. 101-13 ¶¶ 44, 64.) Kahan's own declaration statements do not indicate that Mrs. Winslow made

any allegation of sexual harassment against Kahan to anyone at SRU. As explained in the summary judgment opinion, the record is devoid of any evidence, including Kahan's declaration statements, that Mrs. Winslow accused Kahan of sexually harassing her son. (ECF No. 123 at 44-46.) Kahan identifies no evidence to the contrary in support of his motion for reconsideration.

With respect to the second alleged factual dispute identified by Kahan, the court resolved any pertinent factual dispute in Kahan's favor. Kahan argues that the court should have relied upon his declaration, and the statements offered by two students, and found that Kahan never made a comment to Mrs. Winslow's son during class about staring at a good-looking man. (ECF No. 127 at 7.) Whether Kahan did, or did not, make that statement was not material to the court's summary judgment rulings. Kahan's gender discrimination and hostile work environment claims were based upon allegations that various defendants repeated the good-looking man comment to and among SRU officials. (ECF No. 100 (Kahan summary judgment brief) at 12-14, 19-20.) In the summary judgment opinion, this court explained why repetition of the comment was insufficient to support either kind of federal claim. (ECF No. 123 at 29, 43-46.) For purposes of assessing whether Kahan's federal claims could survive summary judgment, this court viewed the record in Kahan's favor with respect to - not whether the good-looking man comment was actually made - who repeated the comment to whom at SRU, and what, if any, effect that had on Kahan's employment at SRU. The factual dispute that Kahan accuses this court of improperly making, i.e., whether or not Kahan made the comment, could be relevant to Kahan's state-law tort claims, but was not pertinent to assessing the federal claims, which are the only ones that this court reached in the summary judgment opinion. Kahan fails to establish that this court committed any error with respect to this comment.

This court viewed the record in the light most favorable to Kahan, and decided all *relevant* factual disputes in Kahan's favor. Kahan, therefore, cannot meet his burden of establishing that this court made a clear error of any kind in entering judgment as a matter of law on his federal claims.

### D. **Criminal Charges and Campus "Ban"**

According to Kahan, this court erred by finding that the criminal charges filed against him did not constitute an adverse employment action. (ECF No. 127 at 8.) Kahan claims that the criminal charges stemming from the May 18, 2010 incident, "along with his May 2010 exclusion from the SRU campus," constitute adverse employment actions because they "had a serious impact upon [his] job prospects." (Id.) The court ruled in the summary judgment opinion that Kahan failed to proffer evidence from which a reasonable jury could find that the criminal charges, or the alleged campus ban, resulted in a significant change in Kahan's employment status or conditions. (ECF No. 123 at 24-26.) Kahan's new allegation that these events qualify as adverse employment actions because they impacted his future job prospects is both untimely, and unsupported on this record.

Before proceeding with an explanation about why this new argument does not entitle Kahan to relief, the court must note a significant evidentiary matter. At the time the summary judgment opinion was issued, the court pointed out that the letter purportedly banning Kahan from the SRU campus was not provided to the court, and that there was no other evidentiary support for Kahan's assertion that he was banned from campus. (Id. at 25.) The court nevertheless accepted Kahan's assertions about the campus ban as true for purposes of summary judgment. (Id.) Kahan has now provided the court with a copy of that letter, and it is not as clear as Kahan represented it to be. (ECF No. 128-1.) The letter does not exclude Kahan

from the SRU campus, as Kahan still contends, (ECF No. 127 at 8), but states that an escort

would accompany Kahan to clean out his office, and that Kahan would not be permitted to return

to the history department building without advance permission, (ECF No. 128-1). These

restrictions on Kahan's access to the SRU campus are significantly less than Kahan represented

them to be in his summary judgment papers. This factual discrepancy is without ultimate

consequence, but is insightful.

 Returning to the merits, the first deficiency in Kahan's argument that the criminal

charges and campus "ban" qualify as adverse employment actions because they has a "serious

impact on his job prospects" is that Kahan raises this argument for the first time in his motion for

reconsideration. Kahan did not advance this argument in opposition to any motion for summary

judgment. (ECF No. 123 at 24.) It is too late for Kahan to raise this novel theory now. Bell, 275

F. App'x at 160; Spence, 147 F.App'x at 291-92; Bhatnagar, 52 F.3d at 1231; Trenton, 832 F.2d

at 810; Miller, 2014 WL 108585, at *2. This argument, therefore, must be, and is, rejected

outright on procedural grounds.

 Second, even if this court was to reach the merits of Kahan's argument, as was

noted in the summary judgment opinion, the adverse employment action determination was not

dispositive of Kahan's gender discrimination claims. (ECF No. 123 at 26.) Kahan's claims

failed on the alternative grounds that Kahan did not adduce sufficient evidence to support a

reasonable jury determination that SRU treated males less favorably than females, (ECF No. 123

at 26-31), or that SRU's legitimate, nondiscriminatory reason for not renewing his contract was a

pretext for gender discrimination, (ECF No. 123 at 31-40). Nothing in Kahan's current

submission indicates that a different ruling must be reached on either of these determinations.

Lastly, Kahan makes no evidentiary showing in his motion for reconsideration that would support a reasonable jury finding that the criminal charges, or his "ban" from campus caused a "serious impact upon [his] job prospects."   In the context of assessing whether Kahan's due process claim could survive summary judgment, this court did examine the record evidence in support of Kahan's factual contention that he was unable to obtain full-time employment because criminal charges were filed against him as a result of the May 18, 2010 incident. (ECF No. 123 at 73-76.)  The court explained that the evidence of record could not support a reasonable jury finding that Kahan was unable to obtain employment because of Mrs. Winslow's accusations about the May 18, 2010 incident, or the criminal charges that resulted therefrom. (Id. at 75.)  Kahan's motion for reconsideration does not rely upon any additional evidence to support his new argument that the criminal charges impacted his job prospects.  The same analysis and conclusions about the record that are set forth in the summary judgment opinion would dictate that no reasonable jury could find that Kahan's employment prospects were "seriously impacted" by the criminal charges.

Likewise, there is no evidence of record that would support a reasonable jury finding that Kahan's May 2010 "ban" from campus "seriously impacted" his job prospects.  The record is devoid of evidence that any employer knew that Kahan was "banned" from the SRU campus in May 2010.  Kahan's conclusory, and unsupported, statement that "the punishment…has had a serious impact upon Dr. Kahan's job prospects" would not support a reasonable jury verdict in his favor on this claim. (ECF No. 127 at 8.)

Kahan makes no showing that this court committed a clear error of law, or any other kind of error, on the basis that he suffered adverse employment actions due to the criminal charges or his May 2010 "ban" from the SRU campus having a "serious impact" on his job prospects.

### E. **Comparator**

Kahan contends that this court erred by making the "unilateral determination that Ms. Klenovich was not a comparator" because "a fact-finder could have concluded that they were comparators." (ECF No. 127 at 9.) Kahan bases his current position, in large part, upon a newly-asserted argument that Ms. Klenovich, who worked in the same department "and had similar job responsibilities," complained about Mrs. Winslow's son's in-class conduct, but was not disciplined, while Kahan was "terminated" for doing so. (Id. at 10.) Kahan acknowledges that he did not make this argument or cite to any evidence in support of it in his summary judgment briefing on the issue of Klenovich's status as a comparator, but argues that the evidence can be found elsewhere in the record and that courts must look to the record in its entirety in deciding summary judgment motions. (Id. at 10 & n.9.) Kahan argues, in the alternative, that a comparator need not always be identified in order to survive summary judgment, and that, in this case, no comparator is required because "a jury could infer that he was the target of gender-based animus." (Id. at 11.)

Despite the court's clear indication in the summary judgment opinion that Kahan failed to produce evidence sufficient to permit a reasonable jury to find that Klenovich and he were comparators, Kahan contends on reconsideration that the "parties do not dispute" that he and Klenovich "worked in the same department and had similar job responsibilities." (Id. at 9.) Kahan is wrong. In opposition to the SRU Defendants' motion for summary judgment, Kahan

argued, in one paragraph, citing to statements of material fact supported only by his own declaration, that a "lower ranked female faculty member" was treated more favorably than he was. (ECF No. 100 (Kahan summary judgment brief) at 15 (citing ECF No. 122 (CCSMF) ¶¶ 61, 212).) This court concluded, in the summary judgment opinion, "that Kahan failed to produce evidence indicating whether Klenovich was a probationary faculty member, or if she was, in which year of her probationary term she was during the 2009-2010 academic year," and noted that "[t]he record is devoid of any evidence about what Klenovich's job title or duties were, to whom she reported, or her seniority at SRU." (ECF No. 123 at 27.) Kahan cites to no additional record evidence in connection with his motion for reconsideration to indicate that the court was mistaken in reaching these conclusions about the deficiencies in the evidentiary record.

Kahan's argument on reconsideration that this court had the obligation to assemble evidence that he relied upon in opposition to other defendants' separately-filed motions for summary judgment, with respect to claims that were not brought under Title VII or Title IX, is unconvincing, and contrary to law. Doeblers' Pennsylvania Hybrids, Inc., v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (noting: "Judges are not like pigs, hunting for truffles buried in the record."). Kahan has the obligation to assemble that evidence on which he wishes to rely in support of each argument he advances in opposition to summary judgment. The court considered that evidence Kahan cited in support of his argument that Kahan was a valid comparator. In any event, as set forth immediately below, even if the court was to consider Kahan's dispersed evidence of comparability, the record would remain insufficient to support a reasonable jury finding that Kahan and Klenovich were valid comparators. Kahan's conclusory contention that a jury must decide whether Klenovich was sufficiently, similarly situated to Kahan to qualify as a comparator, is, therefore, improper. (ECF No. 127 at 9.)

Kahan's new argument with respect to Klenovich's status as a comparator, i.e., that she too complained about Mrs. Winslow's son, but was not disciplined, fails to justify reconsideration for several reasons. As an initial matter, this theory is advanced for the first time in support of Kahan's motion for reconsideration. For this reason alone, the argument does not warrant reconsideration. Bell, 275 F. App'x at 160; Spence, 147 F.App'x at 291-92; Bhatnagar, 52 F.3d at 1231; Trenton, 832 F.2d at 810; Miller, 2014 WL 108585, at *2. Even if Kahan's argument was procedurally proper, it is wholly unsupported by evidence of record. Kahan cites to no evidence that would allow a reasonable jury to find that Klenovich and he were similar in all relevant respects, yet suffered disparate discipline for the same, or comparable, misconduct. As set forth above, the court noted that Kahan failed to adduce any evidence about Klenovich's job title, duties, or seniority, beyond his own conclusory declaration that she was a "lower ranked female faculty member." (ECF No. 123 at 27; ECF No. 101-13 (Kahan Declaration) at 3-4 (¶16).) There is also no evidence in the record concerning to whom Klenovich complained about Mrs. Winslow's son, what she complained about, or whether Klenovich ever became involved in a dispute with Tommy Winslow that required the intervention of SRU administrators.

The only evidence to which Kahan cites in support of his new argument are midterm progress report forms that Klenovich, and other professors, submitted to the Office for Students with Disabilities about Tommy Winslow, and an excerpt from Tommy Winslow's deposition in which he remarks that Klenovich asked him, in the presence of a fellow student outside of class, why he puts his head down during class. (ECF No. 127 at 10; ECF No. 101-8 at 9-52.) These items are insufficient to support a reasonable jury inference that Kahan was disciplined differently than Klenovich because he is a man.

The progress reports are not complaints about Tommy Winslow, but are pre-printed forms on which all professors are asked to rate a student's performance in several areas and to note those areas in which the student needs assistance or accommodation. (ECF No. 101-8 at 9-52.) The record reflects that other professors, both male and female, completed Tommy Winslow's forms in a manner similar to Klenovich, noting a lack of effort and motivation, and difficulty with taking notes and participating in class. (Id.) There is no evidence that any professor, male or female, including Kahan, was disciplined for how he or she completed midterm progress reports. In any event, completion of these forms cannot be equated to the ongoing dispute that arose between Kahan and Tommy Winslow, and his parents, about his final report and grade.

No reasonable jury could equate Klenovich's informal discussion with Tommy Winslow about him putting his head down in class to the ongoing dispute that arose between Kahan and Tommy Winslow, and his parents, about his final report and grade. There is no evidence that any SRU official was aware at the time that Klenovich had an informal conversation with Tommy and one of his friends about this issue. A lack of discipline stemming from that conversation, therefore, cannot be probative of SRU's purported disparate treatment of men.

Because the progress reports and Klenovich's informal discussion with Tommy Winslow are not comparable, any disparity between the discipline imposed on Kahan and Klenovich cannot be probative of gender discrimination under the circumstances of this case. Even if this court was to consider Kahan's new argument about Klenovich on its merits, there would still be insufficient evidence to support a reasonable jury inference of gender discrimination on the record before this court.

Kahan likewise fails to produce any evidence to support his conclusory assertion on reconsideration that he need not identify a comparator because a reasonable jury could otherwise infer from the record that he was the target of gender-based animus. (Id. at 11.)  As an initial matter, the court did not rule that Kahan's federal claims failed as a matter of law because he was unable to identify a valid comparator. (ECF No. 123 at 26.)  Instead, the court assessed Klenovich's status as a comparator because Kahan relied upon two arguments to meet his burden to establish a prima facie case of gender discrimination during summary judgment proceedings: (1) that he was the target of gender stereotypes; and (2) that he was treated less favorably than Klenovich. (Id. (citing ECF No. 100 (Kahan summary judgment brief) at 12, 15).)  The court considered each of Kahan's arguments, but concluded that the record evidence adduced by Kahan would not permit a reasonable jury to conclude that Kahan met his threshold burden to prove a prima facie case of gender discrimination upon either basis. (ECF No. 123 at 27-31.) Kahan's current contention that his claim can survive summary judgment without proof of a comparator is, therefore, inconsequential.  Even were Klenovich's status as a comparator removed entirely from the equation, this court's summary judgment ruling would not be subject to reconsideration because this court previously examined the record and found it to be devoid of any evidence of gender-based animus that could possibly support a prima facie case, including specifically, Kahan's repeated arguments that he was the victim of gender stereotypes. (Id. at 26-46.)

In any event, this court did not consider Kahan's ability, or inability, to establish a prima facie case dispositive.  This court, instead, presumed for purposes of the summary judgment opinion that Kahan could meet his burden of proving a prima facie case, but ultimately determined that Kahan, based upon the record presented, did not adduce sufficient evidence that

would permit a reasonable jury to find that SRU's proffered legitimate, nondiscriminatory reason for not renewing his contract was pretextual. (Id. at 31-40.) Because Klenovich's status as a comparator was not determinative to this court's summary judgment decision, any alleged error committed by this court in assessing her status cannot necessitate reconsideration.

Kahan fails to demonstrate a clear error with respect to Klenovich's status as a comparator, or Kahan's ability to establish a prima facie case without reference to a comparator. There is no basis to reconsider this court's summary judgment ruling on these grounds.

## F. **Procedural Irregularities**

Kahan claims that this court should "revisit its decision on summary judgment" because Kahan's review process was "beset with procedural irregularities," which would permit a reasonable fact-finder to conclude that the "process is indicative of discriminatory pretext." (ECF No. 127 at 12-13.) All the arguments made by Kahan in support of this ground for reconsideration were previously made during summary judgment briefing. The court considered them, and explained the reasons for rejecting them, in the summary judgment opinion. (ECF No. 123 at 34-39.) Kahan cannot use a motion for reconsideration to rehash issues and arguments that have been ruled upon. Keyes, 766 F.Supp. at 280.

## G. **Causation**

Kahan's final argument is that this court committed error by ignoring evidence of causation and improperly deciding a jury question. (ECF No. 127 at 13.)[5] In opposition to the SRU Defendants' motion for summary judgment, Kahan accused SRU of retaliating against him

---

[5] In this section of his brief, Kahan inexplicably reiterates arguments about pretext, gender stereotypes, and factual disputes that are, and were, properly considered above in the context of Item #1 (re: stereotyping), Item #3 (re: factual disputes about Kahan's conduct) and Item #5 (re: pretext for gender discrimination). (ECF No. 127 at 14-16.) Although restated in this section, the court does not readdress Kahan's arguments.

for filing a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") by a) refusing to hire him, in October 2011, to fill the faculty vacancy created by the non-renewal of his contract, and b) refiling criminal charges against him in October 2010. (ECF No. 123 at 49-51.) The court concluded that Kahan failed to adduce sufficient evidence to permit a reasonable jury to find the requisite causal link between the EEOC charge and either alleged instance of retaliation. (Id. at 52-53.)

On reconsideration, Karan argues that his retaliation claim should have survived summary judgment because he can proffer evidence of "ongoing antagonism" between the time he was "terminated" and the time he applied for a job with SRU in October 2011. (ECF No. 127 at 11.) During summary judgment, Kahan argued that his retaliation claim with respect to his 2011 employment application could survive summary judgment because he proffered evidence of "ongoing antagonism." (ECF No. 100 (Kahan summary judgment brief) at 31.) Kahan offered two pieces of evidence in support of this theory at that time: (1) Professor Cowen's refusal to recommend Kahan for the job; and (2) Professor Denning's report to history department chairman Craig that Kahan applied for the job. (ECF No. 123 at 53.) Kahan now contends that Mrs. Winslow's deposition testimony that she told members of SRU's history department about the May 18, 2010 incident supports a reasonable jury finding that Kahan was the victim of "ongoing antagonism" and was not hired in October 2011 due to retaliatory animus. (ECF No. 127 at 11.) The court concludes that Mrs. Winslow's deposition testimony would not be sufficient to support a reasonable jury verdict in Kahan's favor on his retaliation claim.

As an initial matter, although Kahan knew at the time he opposed the SRU Defendants' motion for summary judgment that Mrs. Winslow told members of SRU's history department about the May 18, 2010 incident, he did not include this evidence of "ongoing antagonism" in his opposition papers. See supra Sec. III.A. He cannot now point to this previously-known evidence in support of his claims, via a motion for reconsideration. Bhatnagar, 52 F.3d at 123; Miller, 2014 WL 108585, at *2. Kahan's argument can be rejected outright on this basis alone.

Regardless, even if this court considered the merits of this belatedly-asserted evidence of ongoing antagonism, it would not warrant submission of Kahan's retaliation claim to a jury. Just as the court found with respect to Professors Cowen and Denning, Kahan makes no showing that Mrs. Winslow knew that he filed a charge with the EEOC.[6] (ECF No. 123 at 54.) Kahan similarly makes no showing with respect to how a reasonable jury could infer from the record before this court that Mrs. Winslow knew about Kahan's EEOC filing. The court notes that Mrs. Winslow was no longer employed by SRU's history department at the time Kahan filed his EEOC charge in September 2010. (ECF No. 101-11 at 3 (Mrs. Winslow left the history department in August 2010).)

Even if knowledge of the EEOC charge could be imputed to Mrs. Winslow, which finding would contradict the record, no reasonable jury could conclude that Mrs. Winslow had any influence on the history department's decision not to offer Kahan employment when he applied in October 2011. Kahan offers no direct evidence that Mrs. Winslow was involved in the hiring decision. Her involvement cannot be inferred based upon this record, which reflects that

---

[6] The only protected activity that Kahan claimed he participated in was his filing of a charge of discrimination with the EEOC, and his companion filing with the Pennsylvania Human Relations Commission. (ECF No. 100 (Kahan summary judgment brief) at 29.)

Mrs. Winslow had not worked for that department for more than a year when the hiring decision was made.

Putting these defects in Kahan's proffers aside, Mrs. Winslow's statements in May 2010 could not support a reasonable jury inference that SRU failed to hire Kahan in October 2011 due to "ongoing antagonism." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). Mrs. Kahan's statements were made immediately after the May 18, 2010 incident. Kahan filed his EEOC charge in September 2010. As a matter of logic and chronology, statements made in May cannot reflect retaliatory animus stemming from an EEOC charge that was filed four months later in September. Mrs. Winslow's statements were, moreover, made almost a year and half before Kahan applied for employment at SRU. There is no indication that Mrs. Winslow continued to speak about the May 18, 2010 incident after she explained to her co-workers why she was working with her door closed or locked after the incident occurred. Isolated statements made seventeen months before SRU decided not to hire Kahan cannot support any reasonable inference that there was a pattern of ongoing antagonism against Kahan.

Although Kahan does not even contend in his motion for reconsideration that Mrs. Winslow's deposition testimony proves that criminal charges were refiled against him in October 2010 in retaliation for his filing of an EEOC charge, such an argument can be rejected outright. As this court explained in the summary judgment opinion, the admittedly close temporal proximity between Kahan's filing of a charge with the EEOC and the refiling of criminal charges against him is not probative of retaliatory animus in this case because there was no evidence that any charging officer knew, or even communicated with any SRU official who knew, that Kahan filed an EEOC charge against SRU. (ECF No. 123 at 52.) There is likewise no

evidence that any charging officer was aware that Mrs. Winslow told her co-workers about the May 18, 2010 incident. It follows that Mrs. Winslow's comments to that effect could not have caused the SRU campus police to refile criminal charges against Kahan.

Kahan fails to demonstrate that clear error occurred on this basis. The court did not ignore evidence of causation or improperly decide a jury question.

## IV.    CONCLUSION

Kahan fails to identify any change in controlling law, new evidence, clear error of law, or manifest injustice that would warrant reconsideration of this court's previous summary judgment decision. Kahan instead attempts to relitigate issues that this court already decided, asks this court to rethink its decision, advances arguments that could have been made sooner, and changes his theory of the case. These grounds are improper to use in seeking reconsideration. Kahan is not entitled to relief on his motion, and it will be denied.

A separate order will be entered contemporaneously with this opinion.


Date: December 11, 2014                                         BY THE COURT:


                                                               /s/ *Joy Flowers Conti*
                                                               Joy Flowers Conti
                                                               Chief United States District Judge